# EXHIBIT A

**Continental Casualty Company's Complaint**

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS
SUFFOLK SUPERIOR COURT
CIVIL ACTION NO.: 20-1042B

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY<br>a/s/o THE MARKLEY GROUP<br>151 N. Franklin Street<br>Chicago, IL 60606<br><br>v.<br><br>VERTIV SERVICES, INC.<br>1050 Dearborn Drive<br>Columbus, OH 43085<br><br>and<br><br>SBE, INC.<br>Wilson Industrial Park<br>81 Parker Road<br>Barre, VT 05641 | SUFFOLK SUPERIOR COURT<br>CIVIL CLERK'S OFFICE<br>FILED<br>MAY 18 2020<br>MICHAEL JOSEPH DONOVAN<br>CLERK OF COURT |

## COMPLAINT

Plaintiff, Continental Casualty Company, as subrogee of The Markley Group, by and through its attorneys, by way of Complaint against the defendants, Vertiv Services, Inc. and SBE, Inc., avers as follows:

### THE PARTIES

1.    Plaintiff, Continental Casualty Company (hereinafter "Continental") is an insurance company with a principal place of business at 151 N. Franklin Street, Chicago, IL 60606.

2.    At all times material hereto, Continental was authorized to issue policies in the State of Massachusetts.

3.    The Markley Group (hereinafter "Markley") has an office and place of business at

1

One Summer Street in Boston, MA, and is in the business of providing uninterrupted power supply to its customers.

4. At all times material, Continental insured Markley with a policy of insurance which included coverage for property damage, business personal property, and loss of business income.

5. Defendant, Vertiv Services, Inc. (hereinafter "Vertiv") is a company engaged in the manufacture, distribution and sale of uninterruptible power supply (UPS) systems, with a principal place of business at 1050 Dearborn Drive, Columbus, OH 43085.

6. Defendant, SBE, Inc. (hereinafter "SBE") is a company engaged in the manufacture, distribution and sale of capacitors, with a principal place of business at Wilson Industrial Park, 81 Parker Road, Barre, VT 05641.

## THE FACTS

7. Markley provides a climate controlled and electrically safe environment for its customers' computer and networking hardware at its building at One Summer Street in Boston, Massachusetts.

8. Several Vertiv systems and/or components were provided to Markley pursuant to a "proposal for service" dated December 7, 2017.

9. The UPS system in question was manufactured by Vertiv in 2006 and provided to Markley on or around December 21, 2017, documented via purchase order written on December 19, 2017 and signed on December 21, 2017.

10. There were four Series 610 UPS Modules in this specific room.

2

11. There were "premium" SBE capacitors installed in UPS systems 814 and 421 at the Markley facility in 2018.

12. On November 11, 2017, representatives of Vertiv made a presentation to Markley for the UPS systems and the capacitors to be installed at Markley. Part of the presentation made by Vertiv included the assurance that the capacitors eliminated the potential for catastrophic failure.

13. Prior to installation at the Markley facility, SBE and Vertiv jointly performed acceptance testing for the capacitors.

14. The parties did not perform the required five-minute dielectric withstand test at 1050 VAC and the one second breakdown test at 3500 VAC and 4500VDC.

15. The UPS systems provided by Markley are designed to provide its customers with continuous and uninterrupted power.

16. The UPS Module B was part of a Vertiv Multi Module System (MMS).

17. On June 22, 2018, a fire originated within the 814 UPS Module B of the Markley facility. Specifically, the fire originated within the lower right corner of the inverter cabinet of Module 2 (B).

18. The replaced capacitors within the 814 UPS Module B assembly consists of stack A, B, C capacitor disks.

19. Heat and smoke from the failed UPS Module # 2 caused the release of water from a fire suppression head.

20. This failure event resulted in the loss of all power from the UPS 814 electrical distribution.

21. The fire occurred due to an electrical fault in the top capacity disk of the stack B of the Output Filter Capacitor. Specifically, there was a dielectric failure at the top capacitor disk of Stack B, and subsequent electrical faults occurred within Stacks A and C.

22. Electrical arcing heat caused ignition of the capacitor plastic material.

23. The capacitor which failed was manufactured by defendant SBE. The capacitor which failed was installed in 2018. SBE and Vertiv jointly performed testing and confirmed validation conditions to qualify the SBE capacitors for use within the Vertiv UPS systems.

24. The capacitor was experiencing higher voltage than it was specified by Vertiv to handle.

25. The SBE capacitor had a voltage rating of 480V AC. However, the failed capacitor was exposed to twice the applied voltage in the Vertiv UPS system at the Markley facility.

26. The cause of the failure was the result of capacitor dielectric breakdown as the Vertiv system contained a capacitor that was not properly rated for this Multi-Module System (MMS).

27. The voltage generated between the output capacitor and inductor exceeded the rating and capacity of the capacitor, and the over-voltage caused the electrical and catastrophic failure and resulting property damage.

28. The electrical arcing event and failure which occurred within the SBE capacitor shorted to the grounded metal tube which caused damage and perforation.

29. The heat from this occurrence triggered the sprinklers, and the water caused significant damage to the Markley facility.

## COUNT I – NEGLIGENCE

### PLAINTIFF V. VERTIV

30. Plaintiff incorporates each of the above paragraphs as though fully set forth herein.

31. The failure within the UPS Module B of the Vertiv system was caused by Vertiv's negligence, which includes the following:

    (a) failing to install capacitors which were properly rated for the system;

    (b) failing to ensure that SBE capacitors met the specifications for the Vertiv UPS systems installed at the Markley facility;

    (c) installing a system that was subject to failure;

    (d) failing to properly test, inspect, and examine the component parts of the four Series 610 UPS modules prior to installation at the Markley facility;

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant Vertiv.

## COUNT II – BREACH OF WARRANTY

### PLAINTIFF V. VERTIV

32. Plaintiff incorporates each of the above paragraphs as though fully set forth herein.

33. The failure within the UPS Module B of the Vertiv system was due to Vertiv's breach of warranty by:

    (a) failing to deliver and install a system that was safe and fit for its intended use.

WHEREFORE, Plaintiff demands judgment judgment in its favor and against Defendant Vertiv.

### COUNT III – BREACH OF CONTRACT

### PLAINTIFF V. VERTIV

34. Plaintiff incorporates each of the above paragraphs as though fully set forth herein.

35. Markley and Vertiv entered into a contract for the sale and supply of the UPS system pursuant to a "proposal for service" dated December 7, 2017.

36. Vertiv, through the contract, warranted to Markley that the UPS system was safe and would be suitable for the intended use by Markley.

37. Vertiv, through the contract, warranted to Markley that the UPS system would be free from defects in design, material, workmanship, and maintenance.

38. Vertiv breached this contract and violated the warranty by providing a system which caused significant damage to Plaintiff and Markley.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant Vertiv.

### COUNT IV – PRODUCT LIABILITY

### PLAINTIFF V. VERTIV

39. Plaintiff incorporates each of the above paragraphs as though fully set forth herein.

40. The UPS system which failed was designed by Defendant Vertiv.

41. The system was unreasonably dangerous as one of its component parts, the capacitor, was not properly rated for this system, which caused the failure and resulting fire.

42. As a direct and proximate result of the defect, plaintiff and its insured suffered damages.

43. Vertiv, through the contract, warranted to Markley that the UPS systems would be free from defects in design, material, workmanship, and maintenance.

44. Vertiv breached this contract and violated the warranty by providing a system which caused significant damage to Plaintiff and Markley.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant Vertiv.

## COUNT V – NEGLIGENT MISREPRESENTATION

45. Plaintiff incorporates each of the above paragraphs as though fully set forth herein.

46. As noted above, representatives of Vertiv, acting on behalf of Vertiv, made a presentation to Markley for the UPS system and the capacitators to be installed at Markley.

47. During the course of the presentation, Vertiv's representatives negligently made the following incorrect statements to the Markley representatives regarding the benefits of Vertiv capacitors:

    a. the "next generation" Vertiv filters would "eliminate catastrophic failures";

    b. the Vertiv "premium capacitors" differed from standard capacitors in that standard capacitors carried a risk of potential collateral damage to the Markley Group's property in the event of a failure, whereas the Vertiv capacitors were

sectional, non-pressurized, would not result in catastrophic failure and would not cause collateral damage to the Markley Group's property;

c. Vertiv understated the risks associated with its product by describing the "component failure mode testing" of its product to have produced a failure that was "not very energetic—some melted polypropylene", and further stated that the failure could only be produced at temperatures significantly higher than the running temperature of a Vertiv capacitor.

48. When they made such statements to the Markley representatives, the Vertiv representatives were negligent as to the statements' truth or falsity.

49. Markley reasonably relied upon Vertiv's negligent misrepresentations in that Markley ultimately purchased the UPS Module from Vertiv that ultimately failed and caused the resulting damages.

50. Vertiv's incorrect statements were material.

51. As a direct, proximate and foreseeable result of Markley's reasonable reliance upon such incorrect statements, the plaintiff has been damaged.

## COUNT VI – NEGLIGENCE
## PLAINTIFF V. SBE

52. Plaintiff incorporates each of the above paragraphs as though fully set forth herein.

53. The failure within the UPS module B of the Vertiv system was caused by SBE's negligence, which includes the following:

(a) failing to properly test, inspect and examine the capacitors prior to the installation and use at the Markley facility;

(b)     failing to properly advise Vertiv on the voltage ratings of the capacitor installed at the Markley facility; and

(c)     failing to ensure that the SBE capacitors met the specifications for the Vertiv UPS systems installed at The Markley facility.

WHEREFORE, Plaintiff demands judgement judgment in its favor and against Defendant SBE.

## JURY CLAIM

Plaintiff demands a trial by jury as to all issues.

Respectfully submitted,
Plaintiff, Continental Casualty Company
a/s/o The Markley Group,
By Its Attorneys

_____
John C. DeSimone (BBO#550142)
Jdesimone@mitchelldesimone.com
John B. DiSciullo (BBO#634662)
Jdisciullo@mitchelldesimone.com
Mitchell & DeSimone
101 Arch Street
Boston, Massachusetts 02110
(617) 737-8300